**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IOAN SAS, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SYNERGETIC COMMUNICATION, INC. and USI SOLUTIONS, INC., )<br>)<br>Defendants. ) | Civil Action No. 20-cv-<br><br><u>Jury Demanded</u> |

**CLASS ACTION COMPLAINT**

Plaintiff, Ioan Sas, on behalf of himself and a putative class, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and alleges:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA and 28 U.S.C. §1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

**STANDING**

3. Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff suffered a concrete injury and harm as a result of Defendants' attempts to collect an alleged debt from him, by mailing him a letter that misrepresents his rights under the FDCPA as well as the identity of the creditor to which

the debt is owed, falsely threatens actions that cannot be taken, and reveals information proscribed from disclosure by the provisions of the FDCPA.

## PARTIES

5.  Plaintiff, Ioan Sas ("Plaintiff"), is an individual that resides in the State of Illinois, from whom Defendants attempted to collect a delinquent debt alleged to be owed, in an individual capacity, to Maryland National Bank.

6.  Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692a(3) in that he is a natural person from whom Defendants sought to collect a debt allegedly incurred for personal, family, or household purposes.

7.  Defendant Synergetic Communication, Inc. ("Synergetic") is a Texas based corporation with its principal place of business at 5450 NW Central, Suite 220, Houston, Texas 77092.

8.  Synergetic does or transacts business in Illinois

9.  Synergetic owns and/or maintains a website, https://www.syncomcorp.net/ ; last visited on October 29, 2020.

10. According to Synergetic's website:

# Positive Consumer Experience "PCE"

Synergetic Communication developed PCE in 2012 to address the dramatic changes in our industry's expected interaction with consumers. Our goal is to anticipate what our clients require from collection efforts.

PCE at Synergetic Communication stands for so much more than "Assuming a Positive Intent" when discussing an account with a consumer. We expect everyone in the company to have this frame of mind and approach to all communications internally and externally. Over time, PCE has morphed into many other acronyms such as:

- Professional Collection Environment
- Positive Call Engagement

2

- Productive Call Effort
- Probe Communicate Engage

See https://www.syncomcorp.net/company/positive_consumer_experience; last visited on October 29, 2020.

11. Synergetic's website also states:

## Contact Synergetic Communication

Synergetic Communication is a Third -Party Debt Collector. If you are a Consumer and have an account placed with our company or you received a letter or call from us , then this is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.

See https://www.syncomcorp.net/company/contact_us ; last visited on October 29, 2020.

12. Synergetic is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

13. Synergetic regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, such as that asserted to be owed by Plaintiff in this case, and is a "debt collector" as defined in 15 U.S.C. § 1692a (6) of the FDCPA.

14. Synergetic has an Illinois collection agency license.

15. Defendant USI Solutions, Inc. ("USI") is a Delaware corporation with its principal place of business located at 925 Canal Street, Building 1, Bristol, Pennsylvania, 19007.

16. USI does or transacts business in Illinois.

15. USI owns/and or maintains a website, http://unitrustsolutionsinc.com/ ; last visited on October 28, 2020.

16. According to USI's website:

3

USI Solutions, Inc is a creditor's rights firm that specializes in debt collection. USI Solutions, Inc is committed to employing innovative and evolving strategies thru utilizing cutting-edge technology in every step of the collections process. We handle accounts in all phases of collections: before, during, and after suit, including post judgment remedies.

See http://unitrustsolutionsinc.com/ ; last visited on October 29, 2020.

17. USI purchases defaulted consumer debts and collects them through third parties.

18. USI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

19. USI has an Illinois collection agency license.

20. USI regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, such as that asserted to be owed by Plaintiff in this case, and is a "debt collector" as defined in 15 U.S.C. § 1692a (6) of the FDCPA.

21. USI's principal business purpose is the collection of defaulted consumer debts through interstate commerce, including the mails, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

22. USI derives more than 50% of its income from the collection, through entities such as Synergetic, of defaulted consumer debts that it purchases.

## FACTUAL ALLEGATIONS

23. According to Defendants, Plaintiff incurred an alleged debt to Maryland National Bank ("alleged debt") in his individual capacity and not in connection with any business.

24. USI asserts to have purchased the alleged debt after default by Plaintiff.

25. USI thereafter placed the alleged debt to be collected by Synergetic.

26. The alleged debt is thus a "debt" as that term is defined at § 1692a (5) of the FDCPA.

27. On or about September 3, 2020, Synergetic mailed a collection letter ("Letter") to Plaintiff in an attempt to collect on the alleged debt (Exhibit A, Letter).

28. Plaintiff read the Letter.

29. The Letter conveyed information about the alleged debt, including an account number, the identity of the creditor, and an account balance.

30. Thus, the Letter was a communication as that term is defined in §1692a (2) of the FDCPA.

31. The Letter was Synergetic's initial communication with Plaintiff made in connection with the collection of the alleged debt.

32. The Letter conveys a "Balance Due" of $4,076.51 on the alleged debt.

33. The Letter also communicates a "Discounted Payment Offer" of $ $1,019.13.

34. The Letter states that "This is an attempt to collect a debt by a debt collector".

35. The Letter states that the "Current Creditor" is "USI Solutions, Inc."

36. The Letter purports to set out several disclosures required by 15 U.S.C. § 1692g, including a "Notice of Debt" that provides in part as follows:

> Unless you notify this office within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving tis notice that you dispute the validity of this debt or any portion thereof, <u>this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.</u> If you request of this office in writing within 30 days after receiving this

notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Ex. A, Letter) (emphasis added)

37. The Letter also provides in part as follows:

The debt is too old for you to be sued on it in court as the statute of limitations has expired, and you can't be required to pay it through a lawsuit. The statute of limitations may be renewed on this debt and start the time for the filing of a lawsuit against you to collect the debt over, if you do any of the following: (a) make a payment on the debt, (b) sign a paper in which you admit that you owe the debt or, in which you make a new promise to pay, (c) sign a paper in which you give up ("waive") your right to stop the debt collector from suing you in court or to collect the debt.

(Ex. A, Letter)

38. At the time the Letter was mailed, there was no judgment entered in connection with the alleged debt.

39. At the time the Letter was mailed, the debt was too old to sue upon.

40. Synergetic's statement that it could obtain a copy of a judgment on the debt and thereafter mail it to Plaintiff is false.

41. Synergetic's statement that it could obtain a judgment on the debt and thereafter mail Plaintiff a copy contradicts its statement, also contained in the Letter, that the debt is too old to be sued on.

42. Plaintiff was confused at the conflicting statements, since the Letter states that it could obtain and mail a judgment to Plaintiff, though it also states that it cannot sue Plaintiff, and thus it also communicates that it cannot obtain a judgment.

43. Synergetic's reference to a judgment made Plaintiff believe that there may have been a judgment entered with respect to the alleged debt, that a judgment could be entered in the future, or that either Defendant was in the process of obtaining one.

6

44. Synergetic's reference to a judgment would confuse the unsophisticated consumer, as it would induce the unsophisticated consumer to believe that there may have been a judgment entered with respect to the alleged debt, that a judgment could be entered in the future, or that either Defendant was in the process of obtaining one—though the Letter also seems to communicate that a judgment is not possible to obtain as the debt is too old to sue upon.

45. The two statements cannot be reconciled: either Synergetic could obtain and mail Plaintiff copy of a judgment, in which case the alleged debt is not too old to sue upon, or the debt is too old to sue upon, in which case no judgment could be obtained and mailed to Plaintiff.

46. Both statements cannot be correct, and thus at least one is wrong.

47. In fact, Defendants had no intention of seeking a judgment on the alleged debt, and could not legally do so.

48. Defendants knew that no judgment had been entered in the past with respect to the alleged debt.

49. Defendants knew that the debt was too old to sue upon, so a judgment could never be entered on the alleged debt.

50. Nonetheless, Synergetic referenced a judgment in the Letter, though there was a 0% possibility that a judgment could be entered when the Letter was mailed.

51. 15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

7

> **. . . (2) The false representation of—**
>
> > **(A) the character, amount, or legal status of any debt; or…**
>
> **. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken**
>
> **. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

52. "When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril." *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012).

53. Synergetic communicated that it could obtain a copy of a judgment and mail it to Plaintiff when it knew it could not legally do so and did not intend to do so, in violation of 15 U.S.C. §§ 1692e(2)(a), 1692e(5), and 1692e(10).

54. Synergetic misrepresented the legal status of an alleged debt, and threatened an action it did not intend to take and that legally could not be taken, in violation of 15 U.S.C. §§ 1692e(2)(a), 1692e(5), and 1692e(10) when it stated that upon written request, it would obtain a copy of a judgment and mail copy of same to Plaintiff, despite there being no such judgment in existence or legally possible.

55. 15 U.S.C. § 1692f of the FDCPA provides as follows:

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

56. Synergetic used unfair means in an attempt to collect a debt, in violation of 15 U.S.C. §1692f, when it stated it could obtain a copy of a judgment and mail a copy

8

of same to Plaintiff, despite there being no such judgment in existence or legally possible.

57. Synergetic referenced both verification and a potential for a judgment in its disclosure even where a judgment was not applicable or legally available, since the alleged debt was too old to sue upon.

58. Synergetic appears to have cut and pasted the language for the disclosure from the statutory text, but failed or refused to select the applicable dispute response available (*i.e.* verification vs. a copy of a judgment). However, a party may not merely parrot language of an order or a statute and comply with the FDCPA when such language is false. *See Boucher v. Fin. Sys. Of Green Bay, Inc.*, 880 F.3d 362, 370-371 (7th Cir. 2018) (analyzing the use of FDCPA safe harbor language drafted by the 7th Cir. when not applicable and finding a violation when the safe harbor language as applied was false, stating …"debt collectors are required to tailor boilerplate language to avoid ambiguity.")

59. Plaintiff was both confused and worried as he did not know whether the debt was too old to sue upon, as stated in one part of the Letter, or not, since the Letter also references a potential for a judgment to be obtained and provided to Plaintiff—which implies that the alleged debt can still be sued upon and/or that a judgment already exists.

60. An unsophisticated consumer would be both confused and worried as he or she would not know whether the debt was too old to sue upon, as stated in one part of the Letter, or not, since the Letter also references a judgment that can be obtained and provided to Plaintiff—which implies that the alleged debt can still be sued upon and/or that a judgment already exists.

61. The 7th Circuit has instructed that language regarding revival of the protections of the statute of limitations "need[s] to be clear, accessible, and unambiguous to the unsophisticated consumer." *Perea v. Portfolio Recovery Assocs., LLC,* 2020 U.S. Dist. LEXIS 177581, at *7 (N.D. Ill. Sep. 28, 2020), citing *Pantoja v. Portfolio Recovery Assocs., LLC,* 852 F.3d 679, 685-686 (7th Cir. 2017).

62. The disclosure regarding the revival of the statute of limitations, when read as a whole, does not adequately communicate Plaintiff's rights regarding the stale debt being too old to sue upon, as it is confusing, nonsensical and ambiguous, and contains false representations regarding Plaintiff's protections under the statute of limitations.

63. The disclosure regarding the revival of the statute of limitations is thus confusing, misleading, deceptive and false, and violates the FDCPA.

64. The Letter states that "The statute of limitations may be renewed on this debt and start the time for the filing of a lawsuit against you to collect the debt over, if you do any of the following: <u>(a) make a payment on the debt</u>…" (Ex. A, Letter, emphasis added)

65. Though written in a very confusing manner, the Letter appears to indicate that the statute of limitations may be renewed if Plaintiff makes a payment on the debt.

66. However, the Letter also offers a "Discounted Payment Offer" of $1,019.13 which it states must be received by 10/18/20.

67. By the Letter's terms, by making a payment of the requested $1,019.13, the statute of limitations would be renewed, and Plaintiff could be sued again to collect the remaining balance of the alleged debt.

68. Plaintiff was confused by the statement, and an unsophisticated consumer would be confused by the statement, as it seems to communicate a request for Plaintiff to pay a reduced balance, though it also states that such a payment would renew the statute of limitations, allowing USI to sue payment for the full amount due.

69. Moreover, the statement is false, as payment of $1,019.13 by Plaintiff by the deadline imposed would preclude USI from filing a lawsuit or restarting the statute of limitations.

70. Synergetic's statement that making a payment toward the alleged debt would renew the statute of limitations was unfair, misleading, deceptive and false, and violated 15 U.S.C. §§ 1692e(2), 1692e(5), 1692e(10), and 1692f.

71. The Letter also state that "The statute of limitations may be renewed on this debt and start the time for the filing of a lawsuit against you to collect the debt over, if you do any of the following:. . .(c) sign a paper in which you give up ("waive") your right to stop the debt collector from suing you in court or to collect the debt." (Ex. A, Letter).

72. The Letter thus communicates that the statute of limitations may be renewed and the "debt collector" may file a lawsuit against Plaintiff if Plaintiff signs a paper in which Plaintiff gives up his right to stop the "debt collector" from suing Plaintiff in court, or to collect the debt.

73. Synergetic identifies itself as the "debt collector" in the Letter.

74. However, Synergetic could not sue Plaintiff to collect the alleged debt even if the alleged debt was not too old to sue upon, as it is neither the creditor nor is it a law firm that could sue Plaintiff in Illinois.

75. Plaintiff was confused by the statement, and an unsophisticated consumer would be confused by the statement, as the Letter states that USI is the "Current Creditor", though it also states that the "debt collector" could sue Plaintiff if he signs a paper waiving his right to stop it from suing him—suggesting that Synergetic, and not USI, was the current creditor.

76. Plaintiff was also confused by the statement as it suggested that the "debt collector", here Synergetic, was a law firm that could "sue" Plaintiff in certain circumstances.

77. Synergetic is not a law firm.

78. Because Synergetic is not a law firm, it could not legally sue Plaintiff to collect the alleged debt under any circumstances.

79. 15 U.S.C. § 1692g of the FDCPA provides as follows:

> **(a) Notice of debt; contents**
>
> **Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**
>
> **. . . (2) the name of the creditor to whom the debt is owed. . . .**

80. A debt collector risks violating the FDCPA when it chooses its own language that does not make clear the identity of the current creditor. *Steffek v. Client Servs.*, No. 19-1491, 2020 U.S. App. LEXIS 1759, at *12 (7th Cir. Jan. 21, 2020).

81. Synergetic failed to effectively state the name of the current creditor to whom the debt is owed by stating that the debt collector could sue Plaintiff in some circumstances, when it could not since it does not own the alleged debt and thus is not the creditor, in violation of 15 U.S.C. § 1692g(a)(2).

82. Further, Synergetic's statement that the "debt collector" could sue Plaintiff in certain circumstances was unfair, misleading, deceptive and false, and violated 15 U.S.C. §§ 1692e(2), 1692e(5), 1692e(10), and 1692f.

83. Violations of the FDCPA which would influence a consumer's decision to pay a debt in response to a dunning letter are material. *Boucher v. Fin. Sys. Of Green Bay, Inc.*, No. 17-2308, 2018 WL 443885, at *2 (7th Cir. Jan. 17, 2018) (citing *Muha v. Encore Receivable Mgmt., Inc.,* 558 F.3d 623, 628 (7th Cir. 2009)).

84. Synergetic's misrepresentation of the identity of the current creditor by communicating that it could sue Plaintiff in some circumstances, in addition to its false suggestion that it could obtain and mail Plaintiff a judgment, are material misrepresentations as they would influence Plaintiff's, and an unsophisticated consumer's, decision to pay a debt in response to having received the Letter.

85. Put another way, Synergetic's statement that it could send a copy of a judgment to Plaintiff, when the debt was too old to sue upon, is material as it would confuse both Plaintiff and an unsophisticated consumer since it made Plaintiff believe (as it would make an unsophisticated consumer believe) that disputing the alleged debt may not matter, as a judgment could be obtained by Synergetic regardless of whether the alleged debt is too old to be sued upon.

86. The Letter was mailed in an envelope ("Envelope") with a glassine window that showed Plaintiff's name and address, a return address as well as the words "PERSONAL & CONFIDENTIAL". (Exhibit B, Envelope).

87. The FDCPA prohibits using an envelope that contains any language other than the debt collector's address, and its name if the name does not indicate that it is a debt collector.

88. Thus, the presence of the words "PERSONAL & CONFIDENTIAL" violates the FDCPA.

89. Plaintiff was dismayed when he saw the Envelope.

90. The wording visible on the Envelope is common on collection letters and is used in an effort to persuade debtors to open the letters rather than throw them away as junk mail.

91. However, the wording also communicates that the Letter likely regards a collection matter before the recipient even opens it.

92. It would be apparent to anyone viewing the envelope that it contained a letter regarding a personal and confidential matter, including to Plaintiff's postal carrier, family members, and neighbors.

93. 15 U.S.C. § 1692f(8) of the FDCPA proscribes:

**(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.**

94. The FDCPA thus prohibits using an envelope that communicates any language other than the debt collector's address and business name if such name does not indicate that he is in the debt collection business.

95. Synergetic used an unfair practice to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f(8), when it sent Plaintiff a collection letter that communicated language other than its address on the envelope.

96. The inclusion of any language that is not Synergetic's name or address violates § 1692f(8). *Preston v. Midland Credit Mgmt.*, 948 F.3d 772, 784 (7th Cir. 2020) (finding an FDCPA violation over the inclusion of TIME SENSITIVE DOCUMENT on an envelope) (emphasis in the original).

97. The Seventh Circuit has further reiterated what the statute already makes clear: no language or symbol other than the debt collector's address is permitted. *Id.* (finding no exception even for so-called "benign language" on an envelope).

98. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. See *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

99. USI bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Synergetic, and is liable for the actions taken to collect a debt on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016).

### CLASS ALLEGATIONS—COUNT I—LETTER CLASS

100. Plaintiff realleges the above allegations as if set forth fully in this Count.

101. Plaintiff, Ioan Sas, brings this action individually and as a class on behalf of the following class:

(1) all persons similarly situated in the State of Illinois (2) from whom Synergetic attempted to collect an alleged debt on behalf of USI (3) by mailing a form letter substantially similar to that mailed to Plaintiff attached within Exhibit A (4) which states in part:

>Unless you notify this office within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving tis notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(5) and which also states in part :

>The debt is too old for you to be sued on it in court as the statute of limitations has expired, and you can't be required to pay it through a lawsuit. The statute of limitations may be renewed on this debt and start the time for the filing of a lawsuit against you to collect the debt over, if you do any of the following: (a) make a payment on the debt, (b) sign a paper in which you admit that you owe the debt or, in which you make a new promise to pay, (c) sign a paper in which you give up ("waive") your right to stop the debt collector from suing you in court or to collect the debt.

(6) where judgment has not been entered in connection with the debt sought to be collected (7) that contains a "Discount Payment Offer" (8) mailed during the period of time that begins one year prior to the filing of this Class Action Complaint and ends on the date of filing of the Class Action Complaint.

    102.    The Letter within Exhibit A is a form letter.

    103.    Synergetic violated 15 U.S.C. §§ 1692e, 1692f, and 1692g of the FDCPA as the Letter: i) does not accurately communicate the name of the creditor to which the alleged debt is owed, ii) falsely indicates that the "debt collector" may sue Plaintiff in some circumstances, iii) misleadingly, falsely, deceptively and unfairly communicates that Synergetic could obtain and mail a copy of a judgment on the debt (implying that it already exists or could be obtained) to Plaintiff while also stating that the debt is too old to sue upon, and thus that it cannot obtain a judgment as to the same, iv) falsely states that the statute of limitations could be revived and a lawsuit could be filed if a payment is

made, yet the Letter also offers a discounted payment, without explaining how these two statements fit together and, v) has a disclosure regarding the revival of the statute of limitations that is not communicated in a manner that an unsophisticated consumer can understand and/or that is incorrect, as the information contained therein is confusing, misleading, deceptive and false.

104. As Exhibit A is a form letter, the Class likely consists of more than 40 persons each from whom Synergetic attempted to collect a defaulted USI debt.

105. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of each Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

106. The prosecution of separate actions by individual members of each Class would create a risk inconsistent or varying adjudications with respect to individual members of the Class and would, as a practical matter, either be dispositive of the interests of other members of the Classes not party to the adjudication, or substantially impair or impede their ability to protect their interests.

107. Plaintiff will fairly and adequately protect and represent the interests of the Class. The factual and legal issues raised by this class action complaint will not require extended contact with the members of each Class, because Synergetic's conduct was perpetrated on all members of the Class and will be established by common proof.

108. Moreover, Plaintiff has retained counsel that has been approved as class counsel in previous class actions brought under the FDCPA.

109. USI is liable for the violations committed by Synergetic.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants as follows:

    A.    Statutory damages in favor of Plaintiff and all class members pursuant to 15 U.S.C. § 1692k(a)(2)(B);

    B.    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k (a)(3); and

    C.    Such other or further relief as the Court deems proper.

## CLASS ALLEGATIONS—COUNT II—ENVELOPE CLASS

110. Plaintiff realleges the above allegations as if set forth fully in this Count.

111. Plaintiff re-alleges above paragraphs as set forth fully in this count.

112. Synergetic violated 15 U.S.C. § 1692f(8) by revealing language other than the debt collector's address via an envelope. *Preston v. Midland Credit Mgmt.,* 948 F.3d 772, 784 (7th Cir. 2020),

113. Plaintiff brings this action individually and as a class on behalf of (1) all persons similarly situated in the State of Illinois (2) from whom Synergetic attempted to collect an alleged debt on behalf of USI (3) by mailing a folded letter substantially similar to that found in Exhibit A (4) in an envelope as found in Exhibit B (5) which when viewed, reveals the words "PERSONAL & CONFIDENTIAL" (6) during the period of time that begins one year prior to the filing of this Class Action Complaint, and ends on the date of the filing of this Class Action Complaint.

114. Exhibit A is a form letter.

115. Exhibit B is a form envelope.

116. As Exhibit A is a form letter, and Exhibit B is a form envelope, the Class likely consists of more than 40 persons from whom Synergetic attempted to collect a defaulted debt on behalf of USI, using a letter and envelope substantially similar to those contained in said Exhibits.

117. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class.

118. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

119. The prosecution of separate actions by individual members of the Class would create a risk inconsistent or varying adjudications with respect to individual members of the Class, and would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests.

120. Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Synergetic's conduct was perpetrated on all members of the Class and will be established by common proof.

121. Plaintiff has retained counsel experienced in class action litigation including class actions brought under the FDCPA.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants follows:

    A.    Statutory damages in favor of Plaintiff and all class members pursuant to 15 U.S.C. § 1692k(a)(2)(B);

    B.    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

    C.    Such other or further relief as the Court deems proper.

### JURY DEMAND

Plaintiff demands trial by jury.

By: s/*Mario Kris Kasalo*
One of Plaintiff's Attorneys

Mario Kris Kasalo
**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, IL 60602
Tel 312-726-6160
Fax 312-698-5054
mario.kasalo@kasalolaw.com

### NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: s/ *Mario Kris Kasalo*